UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JESSIE H. SIMMONS, | * | CIVIL ACTION NO. 2:20-CV-02174 |
| | * | |
| Plaintiff, | * | JUDGE CARL BARBIER |
| | * | |
| vs. | * | MAGISTRATE JUDGE DONNA |
| | * | PHILLIPS CURRAULT |
| CARDINAL HEALTH, INC., | * | |
| CARDINAL HEALTH 200, LLC; | * | |
| OSARTIS GMBH F/K/A AAP | * | **JURY TRIAL DEMANDED** |
| BIOMATERIALS GMBH; | * | |
| | * | |
| Defendants. | * | |
| | * | |
| ****************************************** | * | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS
CARDINAL HEALTH, INC. AND CARDINAL HEALTH 200, LLC**

Plaintiff Jessie Simmons ("Plaintiff") brings this products liability action against three Defendants, Cardinal Health, Inc., Cardinal Health 200, LLC, and Osartis GmbH, f/k/a aap Biomaterials GmbH ("Osartis"), for alleged injuries and damages that he claims he sustained after a high-viscosity bone cement allegedly manufactured by Defendants and utilized in a joint replacement surgery purportedly failed. Defendants Cardinal Health, Inc. and Cardinal Health 200, LLC (collectively, "Cardinal Health")[1] move for dismissal of certain of Plaintiff's claims for failure to state a claim under Federal Rules of Civil Procedure 8 and 12(b) – namely, Counts I, III, IV, and V (in part), any claims Plaintiff may assert that fall outside the exclusive bounds of the

---

[1] Plaintiff does not distinguish between the three defendants or between the two Cardinal Health defendants. In filing this motion to dismiss, Cardinal Health reserves its right to contest personal jurisdiction.

3888283-1

Louisiana Product Liability Act (the "LPLA" or "Act"), and claims for relief to which Plaintiff is not entitled (*e.g.,* attorney's fees under the LPLA and punitive damages).

As explained in greater detail below, dismissal of these claims and theories of recovery is warranted because:

- Plaintiff fails to allege any facts to demonstrate a necessary element of a design defect claim under the LPLA – namely, that an alternative design existed, as he alleges defects of high-viscosity cement as a general product category (Count I);

- The Complaint is devoid of any allegations that the bone cement used in Plaintiff's surgery deviated from its intended design or from other products allegedly manufactured by Defendants (Count III);

- Plaintiff fails to allege sufficient facts to state a claim for breach of express warranty (Count IV);

- Plaintiff's claim for redhibition is viable only for economic losses and does not permit the recovery of personal injury damages (Count V);

- The LPLA provides the exclusive remedy for products liability actions under Louisiana law, barring any claims asserted outside of the Act (*e.g.,* Compl. ¶¶ 40-64); and

- Plaintiff is not entitled to attorney's fees under the LPLA or to the recovery of punitive damages (Prayer for Relief Nos. 4 and 6).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)); *see also Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 622 (5th Cir. 2012). A plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief'" demands "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. In other words, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (citation omitted). Further, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (citation and alteration omitted). Thus, to survive a Rule 12(b)(6) motion, the Fifth Circuit has held that "the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006) (citation omitted).

Plaintiff bears the burden of proving four elements to successfully prosecute an LPLA action: (1) Defendants are manufacturers of the product under the Act; (2) Plaintiff's injuries were proximately caused by a characteristic of the product; (3) the product's characteristic that proximately caused Plaintiff's injuries made it "unreasonably dangerous"; and (4) Plaintiff's injuries occurred during "a reasonably anticipated use of the product." *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 260-61 (5th Cir. 2002) (citing La. R.S. 9.2800.54(A)); *see also* La. R.S. 9:2800.54(A). The Act in turn provides only four circumstances under which a product is deemed to be unreasonably dangerous: if the product is (1) "unreasonably dangerous in construction or composition," La. R.S. 9:2800.55; (2) "unreasonably dangerous in design," *id*. at 9:2800.56; (3) "unreasonably dangerous because an adequate warning about the product has not been provided,"

3

*id.* at 9:2800; or (4) "unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product," *id*. at 9:2800.58. *See also Stahl*, 283 F.3d at 261 (citing La. R.S. 9:2800.54(B)).

## ARGUMENT

I. **Plaintiff Fails to State a Plausible Claim for Design Defect, Construction or Composition Defect, or Breach of Express Warranty (Counts I, III, and IV).**

Because the Complaint lacks sufficient factual allegations to state a claim for design defect, construction/composition (manufacturing) defect, and breach of express warranty, the Court should dismiss Counts I, III, and IV in their entirety, with prejudice.

A. **Plaintiff Has Not Alleged Any Facts Showing an Alternative Design Existed to Support His Claim for Design Defect (Count I).**

Plaintiff has failed to state a claim for defective design under La. R.S. 9:2800.56 because he has not alleged that an alternative design existed. The LPLA provides that:

> [a] product is unreasonably dangerous in design if, at the time the product left is manufacturer's control:
>
> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. …

La. R.S. 9:2800.56. Thus, in addition to "alleg[ing] how the design is defective or how the design relates to the injury," plaintiff must also "demonstrate the existence of a specific alternate design." *Robertson v. AstraZeneca Pharms., LP*, No. 15-438, 2015 WL 5823326, at *4 (E.D. La. Oct. 6, 2015). "A conclusory allegation that an alternative design exists will not suffice …." *Id.*

4

Here, Plaintiff alleges that any type of non-high-viscosity bone cement is an alternative design. Plaintiff alleges that bone cement can be either low, medium, or high viscosity, and the product at issue is a "high-viscosity" bone cement. Compl. ¶ 19, 21. He further alleges that "there existed multiple alternative bone cement designs, for example non-HV bone cement, that would have prevented Plaintiff's claimed injuries," "[n]on-HV bone cements are commonly used in knee replacement surgeries, form a better bond and fail less frequently than Cardinal HV Bone Cement, and selling non-HV bone cement instead of Cardinal HV Bone Cement would result in no burden to Defendants." Compl. ¶ 74. According to Plaintiff, high-viscosity bone cement is "less effective than low- or medium-viscosity bone cement ('non-HV')" and "increases the risk of failure," and "[m]echanical loosening …occurred at a significantly increased rate" for high-viscosity bone cement. Compl. ¶¶ 25-29.

Plaintiff's proffered alternative design is not an alternative *design* at all, but rather an entirely different type of *product*: *non*-high viscosity bone cement. None of these allegations point to a specific defective aspect of this particular high-viscosity bone cement that is defective. Rather, Plaintiff asserts that the product category of high-viscosity bone cement should not be used altogether. This is not a permissible design defect claim. *See Theriot v. Danek Med., Inc.*, 168 F.3d 253, 255 (5th Cir. 1999) (rejecting plaintiffs' argument that "other products that do not use pedicle screws should be considered as alternative designs," because "[u]nderlying this argument is the assumption that all pedicle screws are defective and there can be no system using pedicle screws that would be an acceptable product."); *Robertson*, 2015 WL 5823326, at *4 (holding that allegations about other products "are insufficient because the existence of alternate *products* does

not demonstrate the existence of a specific alternate *design*" (emphasis added)).[2] So too, here, the underlying premise of plaintiff's argument is that all high-viscosity bone cement is defective. Like the argument rejected in *Theriot*, this "really takes issue with the choice of treatment made by [plaintiff's] physician, not with a specific fault of the [product] sold by [the defendant]." *Id.*

Plaintiff has thus failed to adequately allege the existence of an alternative design, and his design defect claim (Count I) should be dismissed.

### B. Plaintiff Has Not Pled Any Facts to Support a Construction or Composition Defect Claim (Count III).

Plaintiff has alleged no facts to support a construction or composition defect claim (Count III) under the LPLA, which provides a cause of action for harm caused by a product defect "due to a mistake in the manufacturing process." *Stahl*, 283 F.3d at 263.

The Act provides that "[a] product is unreasonably dangerous in construction or composition if, at the time the product left the manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. R.S. 9:2800.55. Thus, to maintain a 'construction or composition' defect claim under the LPLA," a claim akin to a manufacturing defect claim in other jurisdictions, "a plaintiff must establish that, at the time the product left the manufacturer's control, 'the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical

---

[2] In at least one instance, plaintiffs have been permitted to point to a different product as an alternative design. *See Huffman v. Bristol-Myers Squibb*, No. 16-3714, 2016 WL 6024532, at *1 (E.D. La. Oct. 14, 2016) (declining to dismiss the design defect claim where plaintiff alleged that warfarin was a possible alternative design for another blood thinning product because warfarin had an antidote, where the blood thinner at issue did not). *Huffman* is distinguishable because here Plaintiff argues that *an entire category* of bone cement – high-viscosity cement – is, as a general matter, more prone to failure and less effective than non-high viscosity bone cement. Under these circumstances, the Fifth Circuit's holding in *Theriot* mandates dismissal.

products manufactured by the same manufacturer.'" *Stahl*, 283 F.3d at 261 (granting summary judgment for drug manufacturer where plaintiff did not "provide[] any evidence suggesting that the *particular pills he received* deviated in any way from the manufacturer's production standards or from the manufacturer's otherwise identical products") (citing La. R.S. 9:2800.55) (emphasis added).

To survive a motion to dismiss, Plaintiff therefore "must show not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it unreasonably dangerous." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2013) (internal quotation marks omitted). "A plaintiff must also show how the alleged deviation caused the plaintiff's injury." *Pierre v. Medtronic*, No. 17-12196, 2018 WL 1911829, at *3 (E.D. La. Apr. 23, 2018). This requires more than the formulaic recitation of the elements of the cause of action. *C.f. id.* (finding construction or composition defect claim was adequately pled where plaintiffs alleged not only that the device implanted in plaintiff deviated from defendants' specifications, but also specifically *how* it deviated from such specifications).

Here, Plaintiff only offers conclusory allegations regarding the purported manufacturing defect. *See* Compl. ¶¶ 98-102 (Count III). Plaintiff claims that the product "deviated from product specifications, posing a serious risk that [it] could fail in patients," but does not allege *how* the bone cement allegedly deviated from specifications, performance standards, or similar products. In doing so, "Plaintiff has done no more than formulaically recite statutory provisions and make conclusory allegations, without alleging facts in support of his claims." *Aucoin v. Amneal Pharm., LLC*, No. 11-1275, 2012 WL 2990697, at *10 (E.D. La. July 20, 2012). Without any supporting factual allegations, Count III should be dismissed for failure to state a claim. *See id.* at *10

7

("Plaintiff has not alleged that the medicine he received deviated in any way from the manufacturer's production standards or from the manufacturer's otherwise identical products – he merely recites the elements of this cause of action"); *see also, e.g., Flournoy v. Johnson & Johnson*, No. No. 15-5000, 2016 WL 6474142, at *3 (E.D. La. Nov. 2, 2016) (dismissing an insufficiently pled defective construction or composition claim that did nothing more than recite the elements of the cause of action); *Watson v. Bayer Healthcare Pharm., Inc*., No. 13-212, 2013 WL 1558328, at *4 (E.D. La. Apr. 11, 2013) (dismissing claim where plaintiff "fails to allege facts about the condition" of the product "or suggest how [the product] deviated from its intended design;" "[a]bsent factual allegations addressing how the [product] deviated from Bayer's normal production standards, the plaintiff fails to meet the plausibility standard").[3]

### C. Plaintiff Has Not Alleged Sufficient Facts to Support a Claim for Breach of Express Warranty (Count IV).

Plaintiff also has not alleged sufficient facts to support a breach of express warranty claim (Count IV). "Express warranty" is statutorily defined as "a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, materials or workmanship possesses specified characteristics or qualities or will meet a specified level of performance." La. R.S. 2:2800.53(6). To state a claim for breach of express warranty under the LPLA, a plaintiff must plead "that (1) there was an express warranty made by the manufacturer about the product; (2) the express

---

[3] Plaintiff's manufacturing construction or composition claim also is at odds with his design defect claim. Rather than alleging that the bone cement used in his procedure was actually subject to a "mistake in the manufacturing process," *Watson* at *4, Plaintiff appears to contend that the design of the bone cement generally, *i.e.*, all of this type of bone cement, made the product unreasonably dangerous. *See, e.g.,* Compl. ¶¶ 26-29, 34, 39, 58, 60, 64-66, 71, 73-78, 85, 91, 93, 96, 99; *see also Robertson*, 2015 WL 5823326, at *3 ("… Plaintiff still does not claim that the particular drugs she took deviated from these standards and specifications. Instead, Plaintiff argues that all units of Seroquel deviated from this standard.").

warranty induced the plaintiff to use the product; and (3) the plaintiff's damage was proximately caused because the express warranty was untrue." *Parra v. Coloplast Corp.*, No. 16-14696, 2017 WL 24794, at *4 (E.D. La. Jan. 3, 2017) (citing La. R.S. 2:2800.58).

Here, Plaintiff does not allege facts showing an express warranty was made, its specific contents, to whom it was made, or how the warranty induced Plaintiff or his physicians to use the product. As an initial matter, Plaintiff appears to base his claim on alleged representations about safety and efficacy, *see* Compl. ¶¶ 34, 104, 106-107, but "[a]n express warranty is not a general opinion about or general praise of a product. Moreover, representations that a product is 'safe' or 'effective and safe for its intended use' do not create an express warranty because such statements are nothing beyond a general opinion or praise." *Pierre*, 2018 WL 1911829, at *5; *see also* R.S. 9:2800.53(6) ("'Express warranty' does not mean a general opinion about or general praise of a product."). Further, to the extent Plaintiff relies upon statements made in marketing materials, "[s]tatements contained in advertising or websites generally are not warranties because they are 'puffery,' 'general praise,' or 'general opinion.'" *Robertson*, 2015 WL 582336, at *5 (dismissing claim for breach of express warranty where claim rested on statements made on the drug manufacturer's website or in its marketing materials).

Count IV also fails because Plaintiff "does not allege with specificity anything about the express warranty, including when it was made and who made it." *Parra*, 2017 WL 24794, at *4. Similarly, Plaintiff does not allege how the warranty induced Plaintiff (or more appropriately, his physician) to use the product, beyond a bare recitation of that element of the cause of action. *See* Compl. ¶ 106 ("Plaintiff and/or Plaintiff's physicians justifiably relied on Defendants' representations regarding the safety of the [product]."); *see also Flournoy*, 2016 WL 6474142, at

9

*3 (finding the breach of express warranty claim insufficient in part because Plaintiff failed "to identify *how* that warranty induced the Plaintiff to use the product." (emphasis added)).

For these reasons, the Court should dismiss Count IV.

## II. To the Extent Plaintiff Asserts Any Claims Outside of the LPLA, the Court Must Dismiss Those Claims.

While it is not entirely clear that Plaintiff intends to assert claims or theories of recovery outside of the LPLA, to the extent his Complaint may be interpreted to allege such claims or theories, the Act precludes such claims. *See, e.g.,* Compl. ¶ 60 (asserting, *inter alia*, an alleged failure to adequately test the device, alleged defects in researching, developing, marketing, promoting and selling the device, "other breaches and defects which may be shown through discovery or at trial," and "the failure of Defendants to act with the required degree of care").

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by the products." LA. R.S. 9:2800.52; *see also Stahl*, 283 F.3d at 261-62. In other words, "[a] plaintiff may not recover under any theory of liability that is not set forth in the LPLA." *Parra*, 2017 WL 24794, at *2 (citing *Stahl*, 283 F.3d at 261-62). As the *Parra* court explained:

> A product is unreasonably dangerous for the purposes of the statute "if and only if" it is unreasonably dangerous: (1) in construction or composition, (2) in design, (3) because of inadequate warning, or (4) because of nonconformity to an express warranty. Thus, the LPLA limits the plaintiff to four theories of recovery: construction/composition defect, design defect, inadequate warning, and breach of express warranty.

*Id*. (citation omitted).

Because Plaintiff's claims are based in product liability and brought against Cardinal Health as an alleged "manufacturer" of the bone cement product, *see* Compl. ¶¶ 7, 20, 71-73, 80, 85-86, 88-89, 96, 102, 112, any theories of recovery that are *not* theories of defect based in construction/composition, design, inadequate warning, or breach of express warranty—such as a

negligence claim—are not available. *See Stahl*, 283 F.3d at 261-62; *see also Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250-51 (5th Cir. 1997) ("It is apparent … that plaintiff's allegations of negligence, fraud by misrepresentation, market share liability, breach of implied warranty of fitness and civil conspiracy fail to state a claim against the … manufacturers under the LPLA and must therefore be dismissed."); *Pierre*, 2018 WL 1911829 at *5 (dismissing claims for breach of warranty of fitness for ordinary use, negligence, breach of implied warranty, negligent misrepresentation, and negligent design).

As with the complaint in the *Doe v. AstraZeneca Pharmaceuticals, LP* case, No. 15-438, 2015 WL 4661814, at *2-3 (E.D. La. Aug. 5, 2015), it is not clear whether Plaintiff is attempting to shoehorn additional theories outside of the LPLA into his case, but some of his allegations could arguably be read as bringing claims outside of the Act. For example, Plaintiff alleges that Cardinal Health's "breaches and defects" include "[m]anufacutring, producing, promoting, creating, and/or designing the Cardinal HV Bone Cement without adequately testing it," and "[g]enerally, the failure . . . to act with the required degree of care." Compl. ¶¶ 60-64. Plaintiff also asserts alleged violations of federal food and drug statutes and regulations. *See* Compl. ¶¶ 40-50 (citing Food & Drug Administration ("FDA") regulations and provisions of the Federal Food, Drug & Cosmetic Act ("FDCA")). Neither the FDCA or FDA regulations are an exception to the LPLA's exclusive remedy provision — under which Plaintiff may not assert *any claim* outside of the LPLA's exclusive remedies. Thus, to the extent Plaintiff seeks to assert a claim based on the violation of federal law, such a claim must fail. *See Lewis v. GE Healthcare, Inc.*, No. 5:19-cv-00490, 2020 WL 1490719, at *3-*4 (W.D. La. Mar. 25, 2020) (dismissing plaintiff's negligence per se claim for FDA and FDCA violations because the claim was not recognized by the LPLA); *McBride v. Medtronic, Inc.*, No. 13-377, 2013 WL 3491085, at *4 (W.D. La. July 10, 2013) ("[T]he LPLA

11
3888283-1

does not recognize a claim for violation of FDA regulations and, thus, even if plaintiffs' complaint had alleged a claim for negligence based on the violation of federal regulations, such claim would not be cognizable under Louisiana law." (citing *Sons v. Medtronic, Inc.*, 915 F. Supp. 2d 776, 783 (W.D. La. 2013)); *King v. Bayer Pharms. Corp.*, No. 09-0465, 2009 WL 2135223, *3 (W.D. La. July 13, 2009) (rejecting plaintiffs' contention that the FDCA allows claims for negligence, negligence per se, strict liability, and other theories beyond the LPLA's scope); *McNeely v. Danek Medical, Inc.*, No. 94-CV-0655, 1999 WL 1117108, at *2 (W.D. La. July 8, 1999) (rejecting plaintiff's argument that the FDCA allowed fraud-on-the-FDA claims outside of the LPLA); *Doucet v. Danek Med., Inc.*, No. 96-2439, 1999 WL 1129648, *1 n.4 (W.D. La. June 28, 1999) ("Louisiana does not recognize any claim for violations of FDA regulations. The only remedies available to plaintiffs in this case are provided in the Louisiana Products Liability Act (LPLA).") (quoting *Theriot v. Danek Medical, Inc.*, No. CIV A. 94-2646, 1997 WL 1949373 (E.D. La. Dec. 4, 1997), *aff'd*, 168 F.3d 253 (5th Cir. 1999)).

As the *Doe* court ruled when faced with another unclear complaint, "to the extent that Plaintiff's complaint contains non-LPLA claims, these are preempted by the LPLA" and should be dismissed. *Doe*, 2015 WL 4661814, at * 3. Thus, to the extent Plaintiff here is asserting claims outside of the LPLA, the Court should dismiss those claims as preempted under the LPLA.

### III.    Plaintiff's Claims for Damages to Which He Is Not Entitled Should Be Dismissed.

Plaintiff also attempts to go outside of the LPLA and the cause of action for redhibition in his claims for recovery.

#### A.    Redhibition Does Not Permit the Recovery of Personal Injury Damages (Count V).

Plaintiff asserts a claim for breach of warranty in redhibition (Count V), but appears to seek damages outside of the limits of that claim. "[A] plaintiff has a cause of action for redhibition

12

when a product has defects that 'render [] the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had [s]he known of the defect.' . . . Such a defect gives the buyer 'the right to obtain rescission of the sale.'" *Pierre*, 2018 WL 1911829, at * 5.  "A plaintiff may make a claim under the LPLA for redhibition; however, redhibition is available only to the extent the plaintiff seeks to recover the value of the product or other economic loss." *Id.*

Plaintiff asserts that he is "entitled to the return of purchase price paid … *as well as any other legal and equitable relief to which Plaintiffs may be entitled*," Compl. ¶ 115 (emphasis added), but Plaintiff's recovery in redhibition must be "limited to the cost of the product and other economic damages that [p]laintiff suffered." *Id.* (citations omitted); *see also Cheeks v. Bayer Corp.*, No. Civ. A. 03-132, 2003 WL 1748460, at *1 (E.D. La. March 28, 2003) (dismissing personal injury damages under redhibition claim); *De Atley v. Victoria's Secret Catalogue, LLC*, 876 So. 2d 112, 115 (La. App. 4th Cir. 2004) ("Courts have interpreted the LPLA as preserving redhibition as a cause of action only to the extent the claimant seeks to recover the value of the product or other economic loss.").  Accordingly, the Court should dismiss Count V to the extent it seeks personal injury or other damages beyond the value of the product and other economic damages.

      **B.**    **Plaintiff Is Not Entitled to Punitive Damages and Is Only Potentially Entitled to Limited Attorney's Fees Related to His Redhibition Claim.**

Plaintiff also broadly asserts entitlement to attorney's fees and punitive damages.  *See* Compl., Prayer for Relief.  But the LPLA expressly prohibits the recovery of attorney's fees.  *See* LA R.S. 9:2800.53(5) ("Attorneys' fees are not recoverable under this Chapter."); *see also, e.g.*, *Aucoin v. Amneal Pharm., LLC*, No. 11-1275, 2012 WL 2990697, at *9 (E.D. La. July 20, 2012) (dismissing plaintiff's request for attorney's fees under the LPLA).  Plaintiff may have a limited

13

opportunity to recover attorney's fees related to economic loss should he ultimately prevail on his redhibition claim, *see Pierre*, 2018 WL 1911829, at *6, but his broad request for such relief must be dismissed to the extent he requests attorney's fees for any claims *outside* of those to recover "pure economic loss" in redhibition. *Id.*; *see also Chevron USA, Inc. v. Aker Maritime, Inc.*, 604 F.3d 888, 899-901 (5th Cir. 2010) (noting that attorney fees were allowable in a case involving LPLA claims only if the plaintiff had a redhibition claim to recover for purely economic losses, such as "the cost of the product, and the loss of income or profits resulting from the loss of or inability to use the product as intended"); *De Atley*, 876 So. 2d at 115-16 (explaining that courts must parse fees that relate to the recovery of "purely economic damages" from those costs related to the personal injury claim (quoting Frank L. Maraist & Thomas C. Galligan, Jr., *Louisiana Tort Law* § 15-6 (1996)).

Plaintiff also overreaches in attempting to seek punitive damages, which are not allowed under the LPLA or redhibition. "Under Louisiana law, punitive or other 'penalty' damages are not allowable unless expressly authorized by statute." *Int'l Harvester Credit Corp. v. Seale*, 518 So. 2d 1039, 1041 (La. 1988); *see also* L.A. R.S. 9:2800.51-9.2800.59; *Wilson v. Takata Corp.*, No. 16-1356, 2019 WL 2546929, at *2 (E.D. La. June 20, 2019) ("The LPLA does not allow recovery of punitive damages, as courts in Louisiana have repeatedly recognized.") (citations omitted); *Clayton v. Ethicon Inc.*, No. 17-10168, 2019 WL 1778697, at *1-*2 (E.D. La. Apr. 23, 2019) (dismissing claim for punitive damages because "no statute," including the LPLA, "expressly authorizes punitive damages in this case"); *see Pierre*, 2018 WL 1911829, at *5 ("Neither the LPLA nor the Civil Code articles on redhibition allow recovery of punitive damages."); *Cheeks*, 2003 WL 1748460, at *1 (same). Accordingly, Plaintiff's claim for punitive damages should be dismissed.

14

## **CONCLUSION**

For these reasons, Cardinal Health respectfully requests that the Court dismiss the plaintiff's claims and prayers for relief as described herein.

Respectfully submitted,

 */s/ Brent A. Talbot*
BRENT A. TALBOT (19174), T.A.
PETER J. ROTOLO (21848)
AMY L. McINTIRE (35241)
JESSE FRANK (38220)
         -of-
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
New Orleans, LA 70163-2300
T: (504) 585-7000
F: (504) 544-6095
E: talbot@chaffe.com
   rotolo@chaffe.com
   mcintire@chaffe.com
   jesse.frank@chaffe.com
*Attorneys for Defendants Cardinal Health, Inc.*
 *and Cardinal Health 200, LLC*