UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JESSIE SIMMONS                                           CIVIL ACTION

VERSUS                                                   NO: 20-2174

CARDINAL HEALTH, INC., et al                             SECTION: "J"(2)

### ORDER AND REASONS

Before the Court are a *Motion to Dismiss for Lack of Personal Jurisdiction* **(Rec. Doc. 24)** filed by Defendant, Osartis GMBH ("Osartis"); an opposition thereto (Rec. Doc. 32) filed by Plaintiff, Jessie Simmons; and a reply (Rec. Doc. 47) by Osartis. Additionally, Osartis filed a *Motion to Dismiss for Lack of Personal Jurisdiction* against Cardinal Health, Inc. and Cardinal Health 200, LLC's ("Cardinal Health") cross-claim **(Rec. Doc. 30)**, and Cardinal Health filed an opposition thereto (Rec. Doc. 40). Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that the motions to dismiss should be **GRANTED**.

### FACTS AND PROCEDURAL HISTORY

Plaintiff alleges that Defendants designed, manufactured, tested, marketed, promoted, and sold a high viscosity bone cement known as Cardinal Health Arthroplasty Bone Cement (hereinafter "Cardinal HV"), which was intended to be used in total knee arthroplasties. Osartis is a German company that maintains no offices or employees in Louisiana, makes no sales directly to customers in Louisiana, pays no taxes in Louisiana, does not have an agent to accept service in Louisiana, and

1

maintains no address, telephone number, or bank accounts in Louisiana. However, Osartis contracted with Cardinal Health, an American company also named as a defendant in this suit, to distribute its products throughout the United States. Osartis also files product incident reports with the FDA, including seven incident report in unidentified states.

On February 28, 2018, Plaintiff received a total knee arthroplasty at a Texas hospital in which Cardinal HV was used. Plaintiff subsequently moved to Louisiana, where he was forced to undergo a revision surgery on August 7, 2019, allegedly due to the defectiveness of Defendants' Cardinal HV. On August 4, 2020, Plaintiff filed the present action against Defendants, primarily alleging that Defendants violated the Louisiana Products Liability Act ("LPLA") due to a design, construction, or composition defect, and breach of express warranty. Plaintiff also alleges that Defendants breached the warranty against redhibitory defects. Cardinal Health also filed a cross-claim to enforce the contractual indemnification clause with Osartis as well as a common law indemnification claim. In response, Osartis filed the instant motions to dismiss for lack of personal jurisdiction, which Plaintiff and Cardinal Health (collectively "Opponents") oppose.

## LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits dismissal of a suit for lack of personal jurisdiction. In a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a prima facie showing of jurisdiction. *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The court must

accept uncontroverted allegations of the plaintiff as true and resolve any conflicts of fact in favor of finding jurisdiction. *Id.*

To determine whether a federal court sitting in diversity has jurisdiction over the defendant, the court looks first to the long-arm statute of the forum state to determine whether the forum may exert personal jurisdiction. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012). Next, the court must ensure that exercising jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment. *Id.* Because Louisiana's long-arm statute confers jurisdiction up to the limits of the Constitution, "the two inquiries fold into one." *Luv N'Care*, 438 F.3d at 469.

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume personal jurisdiction over a non-resident defendant unless the defendant has certain "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Supreme Court has recognized both specific and general personal jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779-80 (2017).

Specific personal jurisdiction is limited to "adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). To establish specific personal jurisdiction, a plaintiff must show that "(1) there are sufficient (i.e., not random fortuitous or attenuated) pre-litigation connections between the non-

3

resident defendant and the forum; (2) the connection has been purposefully established by the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts." *Pervasive Software*, 688 F.3d at 221. The burden then shifts to the defendant to show that the exercise of jurisdiction would be unfair or unreasonable. *Id.* at 221-22.

## DISCUSSION

### I. THE FIFTH CIRCUIT'S STREAM OF COMMERCE JURISPRUDENCE

Under the Fifth Circuit's stream of commerce approach, the minimum contacts requirement shall be satisfied if the court "finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987)). The defendant may make sufficient contacts with the forum by placing a product into the stream of commerce if the defendant's product made its way to the forum while still in the stream of commerce and if the product's arrival in the forum was "mere[ly] forseeabl[e]." *Id.* (quoting *Ruston Gas Turbines v. Donaldson Gas Co.*, 9 F.3d 415, 419 (5th Cir. 1993)). However, "[t]he defendant's contacts must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. at 475).

In *Ainsworth*, a widow brought suit against the designer and manufacturer of a forklift that malfunctioned and killed her husband. *Id.* at 178. Moffett Engineering,

4

Ltd., the Irish corporation that manufactured the forklift, distributed its product to the United States through a Delaware corporation, Cargotec. *Id.* at 176. The Fifth Circuit distinguished the facts in *Ainsworth* from the facts in *J. McIntyre Machinery v. Nicastro*, 564 U.S. 873 (2011), where the defendant, a British manufacturer of a defective piece of equipment, sold the equipment one time to a New Jersey company through an American distributor, desired that American distributor to sell their equipment to any Americans willing to buy from them, and sent representatives to attend several American trade shows. *Nicastro*, 564 U.S. at 888.

The *Ainsworth* court pointed out several differences from *Nicastro*. First, the court focused on the $3,950,000 Cargotec earned on the sale of 203 forklifts to Mississippi from January 2010 through September 2010. *Ainsworth*, 716 F.3d at 179. This constituted 1.55% of the company's $254,000,000 of forklifts sold through the American distributor. *Id.* The court also relied on the fact that Moffett could have reasonably expected that Cargotec would make sales to Mississippi given the state's prominence in poultry production and that the forklifts were designed for poultry. *Id.* Accordingly, the court found that the specific facts of the case justified Mississippi's exercise of personal jurisdiction over the defendant.

Under *Ainsworth*, foreseeability becomes the key factor in determining whether a state may properly exercise personal jurisdiction over a foreign defendant when applying the stream-of-commerce test. Plaintiffs may establish foreseeability by showing either that the quantity of the defendant's sales and marketing is high enough that the defendant may reasonably anticipate a court's exercise of personal

5

jurisdiction in that state, or that the defendant has actual knowledge or an expectation that the product stemming the litigation is being sold in the forum. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) ("[T]he forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products with the expectation that they will be purchased by consumers in the forum state."); *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Liability Litigation*, 888 F.3d 753, 779 (5th Cir. 2018). ("[P]laintiffs need only show that [the defendant] delivered the product that injured them into the stream of commerce with the expectation that it would be purchased or used by consumers in the forum state.").

## II. PLAINTIFF AND CARDINAL HAVE FAILED TO MAKE A PRIMA FACIE CASE FOR THE EXERCISE OF PERSONAL JURISDICTION OVER OSARTIS

Opponents must show that Osartis had actual knowledge or an expectation that the allegedly defective bone cement would be used in Louisiana.[1] To support this claim, Plaintiff first points to the fact that Osartis contractually agreed to allow Cardinal Health to distribute their product throughout the United States with no specific geographic limitations. Next, Plaintiff argues Osartis designed their product for the United States market and filed for approval from the Food and Drug Administration ("FDA"). Last, Plaintiff argues that Osartis had sales representatives working throughout the United States selling their product and that Osartis approved an "Instructions for Use" insert included with each shipment of the product.

---

[1] Cardinal Health did not address the minimum contacts issue in their opposition to Osartis's motion to dismiss. (Rec. Doc. 40).

However, none of these contacts specifically target Louisiana, but rather the United States generally.

In *Boat Service of Galveston v. NRE Power Systems*, the defendant, Scania AD, argued that the court lacked personal jurisdiction because it delivered its injury-causing product to a distributor, who then delivered the product to the forum state. 429 F. Supp. 3d 261 (E.D. La. 2019). Although the defendant was a Swedish company doing all of its business in the United States through a wholly owned subsidiary, Scania AD had received the order directly from the purchaser and provided technical support to the purchaser in Louisiana. *Id.* at 271. Because Scania AD provided technical support to customers in Louisiana, the court found that Scania AD had actual knowledge that its product reached Louisiana. *Id.* Reiterating that "the ultimate touchstone remains 'foreseeability,'" the court found that it could exercise personal jurisdiction over the defendant. *Id.* at 272 (quoting *Ainsworth*, 716 F.3d at 177).

While the defendant in *Boat Service* that sold its product to an American distributor had an expectation that its equipment would be sold to customers in Louisiana because the defendant provided technical support, Osartis had no expectation that its product would be used in Louisiana. Plaintiff has not made any specific allegations that Osartis provided any support services to Louisiana residents, has offices or employees in Louisiana, caters its product specifically for Louisiana, or makes any direct sales to Louisiana. Instead, Plaintiff argues that Osartis had an expectation that the product could be used in any state because Osartis had a non-

exclusive distribution agreement with Cardinal Health to distribute throughout the United States. Plaintiff also points to Osartis's continued reporting of complications from their product to the FDA, but Plaintiff cannot identify the states in which the complaints originated. Because he cannot offer any allegations or evidence that Osartis knew or could have foreseen its product reaching Louisiana, Plaintiff fails to carry his burden of establishing Osartis's minimum contacts with the forum.

Additionally, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). In *Stewart v. Marathon Petroleum Co. LP*, the court found that the manufacturer of a trailer was not subject to Louisiana's personal jurisdiction when another defendant purchased the trailer and transported it into Louisiana. 326 F. Supp. 3d 284, 290 (E.D. La. 2018). Although the trailer eventually made its way to Mississippi, the defendant designed and manufactured the allegedly defective trailer in Minnesota, sold and shipped the trailer to a third-party distributor in Florida, and the incident causing the plaintiff's injuries occurred in Ohio. *Id.* at 291-92. The court reasoned that "[o]nce a product has reached the end of the stream and is purchased, a consumer's unilateral decision to take the product to a distant state, without more, is insufficient to confer personal jurisdiction over the manufacturer or distributor." *Stewart*, 326 F. Supp. 3d at 290 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 273 (5th Cir. 2006)). The court found that the trailer had reached the end of the stream when the defendant sold the trailer to a third-party distributor. *Id.* Additionally, the court

found that none of the defendant's contacts with Louisiana gave rise to the dispute. *Id.* at 291. Similarly, Plaintiff's unilateral decision to leave Texas after his surgery established the only connection between the allegedly defective product and Louisiana. Accordingly, Plaintiff has not demonstrated the necessary minimum contacts with Louisiana to establish personal jurisdiction over Osartis.

Plaintiff also relies on *In re Chinese-Manufactured Drywall Products Liability Litigation* and *In re DePuy Orthopaedics, Inc.* to establish that foreign manufacturers cannot escape jurisdiction by asserting that they did not have any operations within the forum, but these cases are distinguishable on their facts. In *Chinese-Manufactured Drywall*, the court identified multiple invoices from the defendant listing New Orleans as the final destination for their product and an email from a potential customer discussing the potential for sales in post-Katrina New Orleans. 753 F.3d 521, 547-48 (5th Ct. App. 2014). Here, there is no allegation that Osartis had this type of actual knowledge that their product reached Louisiana. *DePuy* involved a parent-subsidiary relationship where the subsidiary's actions were imputed to that of the parent. 888 F.3d 753, 779-80 (5th Cir. 2018). Here, Cardinal Health's actions may not be imputed to Osartis because they are unrelated parties engaging in arms-length transactions.

Finally, Plaintiff argues that the recent decision of the Supreme Court of the United States in *Ford Motor Co. v. Montana Eighth Judicial District Court* provides additional support for its argument that exercising jurisdiction over Osartis is proper. There, the Supreme Court consolidated two cases from Montana and Minnesota

9

involving product-liability claims against the Ford Motor Company. 141 S. Ct. 1017, 1019 (2021). Ford argued that because the vehicles had been designed, manufactured, and sold to the plaintiffs in other states, Montana and Minnesota could not exercise personal jurisdiction over the defendant, but the Supreme Court disagreed, finding that both states could exercise jurisdiction over Ford. *Id.* at 1032. After establishing that Ford did have minimum contacts with both states, which Ford did not contest, the Supreme Court focused on the second requirement for personal jurisdiction, that the conduct must "arise out of or relate to" the minimum contacts with the forum. Pointing to the "or relate to" portion, the court rejected Ford's contention that the minimum contacts must have a direct causal relationship to the damages sought by the plaintiffs. *Id.* at 1028 ("Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned[, s]o there is a strong 'relationship among the defendant, the forum, and the litigation'"). Here, however, Plaintiff failed to establish any minimum contacts with Louisiana. Accordingly, the decision in *Ford* cannot alter the decision in this case.

Because Plaintiff fails to make the prima facie case for jurisdiction, the Court need not evaluate whether the exercise of jurisdiction over Osartis would comport with traditional notions of fair play and substantial justice. *See Stewart*, 326 F. Supp. 3d at 292 (citing *Eddy v. Printers House (P) Ltd.*, 627 F. App'x 323, 328 (5th Cir. 2015) ("[W]e do not . . . address whether the 'fair play and substantial justice' requirement has been satisfied, as the determination that the [defendant] lacked 'minimum

contacts' with [the forum state] alone is sufficient to conclude that the district court could not exercise personal jurisdiction.").

### III. JURISDICTIONAL DISCOVERY WOULD NOT ESTABLISH PERSONAL JURISDICTION OVER OSARTIS

Plaintiff alternatively requests jurisdictional discovery if this Court finds that Louisiana may not exert jurisdiction over Osartis, but he fails to establish how jurisdictional discovery would provide the requisite minimum contacts for personal jurisdiction. Plaintiff, as the party seeking discovery, has the burden of showing that additional discovery is necessary. *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013). Plaintiff must make a preliminary showing of jurisdiction by raising specific factual allegations that suggest that jurisdiction likely exists. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). "[A] party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009).

Although the Plaintiff may be able to demonstrate minimum contacts if any of the incidents reported to the FDA arose from Louisiana, Plaintiff would still likely be unable to satisfy the second prong of the analysis because the minimum contacts with the forum arose out of his own unilateral decision to return to Louisiana after his surgery in Texas. Further, even if the second prong was met because some of the seven incident reports to the FDA "relate to" Osartis's contacts with Louisiana, it is doubtful that such a small number of reports would be sufficient to comport with traditional notions of fair play and substantial justice such that the exercise of

11

personal jurisdiction over Osartis would be proper. Accordingly, Plaintiff is not entitled to jurisdictional discovery.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Osartis's *Motions to Dismiss for Lack of Personal Jurisdiction* **(Rec. Docs. 24, 30)** is **GRANTED**. The claims and cross-claims against Osartis by Jessie Simmons, Cardinal Health, Inc., and Cardinal Health 200, LLC are **DISMISSED**, without prejudice.

**IT IS FURTHER ORDERED** that Cardinal Health's *Motion to Stay* **(Rec. Doc. 39)** is **DENIED**, without prejudice, in order to allow Cardinal Health to refile its motion in light of this decision.

New Orleans, Louisiana, this 22nd day of April, 2021.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE